# NOTICE OF REMOVAL

# EX. A

```
 1 │ Hans W. Herb, Esq. (SBN 136018)
   │ LAW OFFICES OF HANS W. HERB
 2 │ P. O. Box 970
   │ Santa Rosa, California 95402                         ENDORSED
 3 │ (707) 576-0757                                        FILED
   │ (707) 575-0364 Fax
 4 │                                                      DEC 27 2004
   │ Attorneys for Plaintiff
 5 │ IRVING KESLER                                    SUPERIOR COURT
                                                       OF CALIFORNIA
 6 │                                                   COUNTY OF SONOMA
```

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SONOMA

| | |
|---|---|
| IRVING KESLER, an Individual, | Case No.: SCV 236018 |
| Plaintiff, | COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION, AND DAMAGES |
| v. | (Declaratory Relief; Breach of Contract; Breach of Duty to Defend; Breach of the Implied Covenant of Good Faith and Fair Dealing; Violation of Cal. B&P Code § 17200; Violation of Cal. B&P Code § 17500) |
| **CNA INSURANCE COMPANY** (aka CONTINENTAL CASUALTY COMPANY; TRANSPORT INSURANCE COMPANY; CNA CASUALTY OF CALIFORNIA; NATIONAL FIRE INSURANCE COMPANY OF HARTFORD; TRANSCONTINENTAL INSURANCE COMPANY; AMERICAN CASUALTY COMPANY OF READING, P.A.; VALLEY FORGE INSURANCE COMPANY; COLUMBIA CASUALTY COMPANY); **UNION PACIFIC RAILROAD COMPANY**, a Delaware corporation; and DOES 1-100, Inclusive, | *Unlimited Civil Case* |
| Defendants. | |

Plaintiff alleges:

## **GENERAL ALLEGATIONS**

### **PARTIES**

1. Plaintiff IRVING KESLER ("KESLER" or "Plaintiff") is an individual residing in Sonoma County California.

2. Defendant CNA INSURANCE COMPANY (aka CONTINENTTAL CASUALTY COMPANY, TRANSPORT INSURANCE COMPANY, CNA CASUALTY OF CALIFORNIA,

NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, TRANSCONTINENTAL INSURANCE COMPANY, AMERICAN CASUALTY COMPANY OF READING, P.A., VALLEY FORGE INSURANCE COMPANY, COLUMBIA CASUALTY COMPANY) (collectively "CNA" or "CNA defendants") is an insurance company doing business in Sonoma County, California.

3. Defendant UNION PACIFIC RAILROAD COMPANY, a Delaware corporation ("UNION PACIFIC"), is a Delaware corporation licensed to and doing business in the State of California, County of Sonoma. UNION PACIFIC is named as a real party in interest in this action pursuant to *State Farm Ins. Co. v. Crane*, 217 Cal.App.3d 1127 [266 Cal.Rptr. 422] (1990), and related legal authority.

4. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sues each of these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

5. As to the CNA defendants, Plaintiff is informed and believes, and thereon alleges, that all times mentioned herein, each and every CNA defendant was the agent, employee, servant, partner, franchise or joint-venturer of each of his or her co-defendants, and in doing the actions hereinafter described was acting within the scope of his or her authority as such agent, employment, service, partnership, franchise and joint venture and with the permission and consent of each co-defendant.

## CNA INSURANCE POLICIES

6. The insurance policies at issue in this lawsuit were issued in Sonoma County, California. The contracts alleged herein and the breaches thereof occurred in Sonoma County, California. The underlying lawsuit and the property at issue in the underlying lawsuit both concern property in Sonoma County.

7. Plaintiff was insured by the CNA defendants under various general liability, personal injury liability, umbrella excess third-party liability and other policies, including those identified in the Certificate of Insurance attached hereto as Exhibit "A."

8. On information and belief, the CNA defendants have full, complete and correct copies of all of its policies in its possession. See *Corum v. Hartford Accident & Indemnity Co.*, 67 Cal.App.2d 891 [155 P.2d 710] (1945).

9. All of the CNA insurance policies require, among other things, that CNA pay the insured's reasonable expenses in assisting CNA with the investigation of any claim or suit; defend and indemnify its insureds from third-party liability claims; promptly and fairly investigate all claims, and pay for any damages covered under the CNA policies.

### THE UNION PACIFIC RAILROAD COMPANY LAWSUIT

10. On or about September 9, 2004, Plaintiff KESLER was sued in an action filed in the United States District Court for the Northern District of California captioned, "Union Pacific Railroad Company, a Delaware corporation v. West Coast Welders Supply Company, Inc. . . . Irving K. Kesler, an individual, . . . and Does 1 through 10, inclusive" (U.S.D.C. N.D. Cal. C-04-02835 MJJ) (the "action" or the "lawsuit").

11. The lawsuit alleges damages covered by the CNA insurance policies issued to Plaintiff KESLER.

12. After searching his records and locating the information necessary to tender the claim, KESLER tendered the defense of the action to CNA on September 23, 2004. Plaintiff requested that CNA fulfill its contractual obligations and that it defend and, if necessary, indemnify him from the subject lawsuit.

13. Because of the looming deadlines and the shortened 20-day time period for a response in federal court, Plaintiff KESLER retained counsel to assist him with his defense of the lawsuit.

14. Rather than responding promptly to aid its insured upon the tender of the action, CNA disputed the existence of any CNA insurance policy ever having been issued to Plaintiff KESLER or any related or affiliated entities.

15. Furthermore, CNA continued to harass and question Plaintiff KESLER, rather than providing any kind of a meaningful defense. Pursuant to California law, an insurance carrier that does nothing more than ask questions when tendered a claim is deemed to have

denied the claim. *Terezian v. Cal Gas. Indem. Exch.*, 42 Cal.App.3d 942 [117 Cal.Rptr. 284] (1974).

16. Despite Plaintiff's repeated demands that CNA honor its obligations and promptly pay for the defense of the claims covered by its policies, CNA has refused to do so. This situation has placed Plaintiff in a position of having to take whatever actions are reasonable under the circumstances to protect his interests. See *Walters v. American Insurance Company*, 185 Cal.App.2d 776 [8 Cal.Rptr. 665] (1960). Included in those actions were the retaining of competent and qualified counsel to assist KESLER in his defense of the UNION PACIFIC RAILROAD action.

17. As a result of CNA's failure to timely respond to his request for a defense, CNA cannot complain of any reasonable defense arrangements Plaintiff KESLER has obtained in connection with this lawsuit. See *Arenson v. National Auto Ins. Co.*, 48 Cal.2d 528 [310 P.2d 961] (1957).

18. Eventually, a couple of months later, CNA sent a letter to KESLER advising it would agree to provide a very limited defense, subject to a reservation of rights, to KESLER for the UNION PACIFIC RAILROAD case. CNA's reservation of rights letter imposed numerous unreasonable conditions upon Plaintiff KESLER, including a requirement that KESLER find different counsel to represent his interest in the action.

19. After additional back-and-forth dialogue with CNA, CNA abruptly changed its position and stated, contrary to its earlier comments, that it would retain competent counsel to defend KESLER in the UNION PACIFIC RAILROAD case. However, when KESLER's defense costs were submitted to CNA for payment, CNA refused to pay any part of the subject billings.

20. After CNA had agreed, pursuant to a written agreement, to retain KESLER competent counsel to represent his interest in this matter, CNA sent an 11-page document captioned, "CNA Litigation Management Guidelines for CNA Environmental and Mass Tort Claims Outside Counsel effective September 1, 2004."

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTION, AND DAMAGES
-4-

21. Guidelines such as those furnished by CNA have been held to violate an attorney's ethical responsibility to exercise their independent judgment in rendering legal services. In addition to the American Bar Association and other bar associations throughout the country, the California courts have held that such requirements are unethical and unlawful. *Dynamic Concepts, Inc. v. Truck Ins. Exchange*, 61 Cal.App.4th 999 [71 Cal.Rptr.2d 882] (1998).

22. As matters presently stand, Plaintiff KESLER currently owes more than $25,000 in defense costs related to the UNION PACIFIC RAILROAD action. CNA has not paid for one penny of the insured's defense. Furthermore, CNA has given no indication that it ever intends to provide any kind of a meaningful defense to its insured, leaving Plaintiff KESLER exposed to massive liabilities in the action.

## FIRST CAUSE OF ACTION
### (Declaratory Relief)
### [As to All Defendants]

23. Plaintiff incorporates into this cause of action each and every general allegation as if the same were set out in full herein.

24. An actual controversy has arisen and now exists between Plaintiff and the CNA defendants concerning their respective rights and duties in that Plaintiff contends he has a legal right to seek recovery of costs and expenses related to his defense of the UNION PACIFIC RAILROAD action, whereas, on information and belief, the CNA defendants dispute these contentions and contend the Plaintiff is not entitled to such relief.

25. Plaintiff desires a judicial determination of his rights and duties, and a declaration that CNA must pay for past, present and future costs related to the UNION PACIFIC RAILROAD action, as well as any other expenses incurred by KESLER related to any other actions tendered to CNA regarding the property that is subject to the lawsuit.

26. A judicial determination is necessary and appropriate at this time, under these circumstances, in order that Plaintiff may ascertain his rights, duties, obligations and benefits under the subject CNA policies.

27. WHEREFORE, Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION
### (Breach of Contract)
### [As to the CNA Defendants]

28. Plaintiff incorporates into this cause of action each and every general allegation as if the same were set out in full herein.

29. Under the written insurance agreements, CNA is required, among other things, to pay the insured's reasonable expenses in assisting the insurer with its investigation of any claim or suit; defend and indemnify the insured from all potentially covered claims; and promptly and fairly pay for all covered losses.

30. CNA has breached its written agreements by failing to perform the obligations set forth above.

31. Plaintiffs has performed all of his obligations under the insurance agreement or is excused from such obligations. In particular, Plaintiff is excused from any obligation to cooperate, in any manner, with CNA, as a result of its prior disclaimer of coverage for anything, vis-à-vis Plaintiff IRVING KESLER. See *Samson v. Transamerica Ins. Co.*, 30 Cal.3d 220 [178 Cal.Rptr. 343] (1981).

32. CNA has damaged Plaintiff in an amount to be proved at the time of trial.

33. WHEREFORE, Plaintiff prays for judgment as set forth below.

## THIRD CAUSE OF ACTION
### (Failure to Defend)
### [As to All CNA Defendants]

34. Plaintiff incorporates into this cause of action each and every general allegation as if the same were set out in full herein.

35. The CNA liability policies issued to KESLER require that CNA defend its insured from potentially covered actions.

36. Upon presentation of the actions alleged herein, Plaintiff promptly (as soon as practical) notified CNA as a demand for defense.

37. Despite Plaintiff's demand for defense, CNA has refused and continues to refuse to provide a proper defense for KESLER under the CNA policies.

38. CNA has breached its duty to its insured by failing to provide a timely and proper response to Plaintiff KESLER.

39. The duty to defend is a continuing and ongoing duty. Despite continued demands to defend, CNA has failed and refused, and continues to fail and refuse, to provide any kind of meaningful defense to its insured.

40. The insured has been injured in an amount within the jurisdictional limits of the Court as a result of CNA's wrongful refusal to defend.

41. WHEREFORE, Plaintiff prays for judgment as set forth below.

### FOURTH CAUSE OF ACTION
(Breach of the Implied Covenant of Good Faith and Fair Dealing)
[As to All CNA Defendants]

42. Plaintiff incorporates into this cause of action each and every general allegation as if the same were set out in full herein.

43. At all times relevant herein, as a result of the special contractual relationship between them, CNA was required to act in good faith and deal fairly with the Plaintiff.

44. By doing the actions alleged herein, including those described in the Fifth Cause of Action, CNA failed to act in good faith or to deal fairly with its insured, and breached the implied covenant of good faith and fair dealing.

45. As a result of its breach of the implied covenant of good faith and fair dealing, CNA has damaged Plaintiff in an amount to be proven at trial.

46. In doing the acts alleged herein, CNA subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, and acted with malice, oppression and fraud. Said defendant's despicable conduct included the failure to properly acknowledge and respond to the claim; failure to properly protect and defend its insured from the subject claim; failure to timely resolve the claims; failure to timely and adequately investigate the claim; and other vile and improper conduct.

47. WHEREFORE, Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
### (Violation of California Business & Professions Code § 17200)
### [As to All CNA Defendants]

48. Plaintiff incorporates into this cause of action each and every general allegation as if the same were set out in full herein.

49. On information and belief, defendant CNA has a business practice of violating numerous statutory and common law duties to its insured, including but not limited to California Civil Code § 2772, et seq., California Insurance Code § 790, et seq., and other laws governing the conduct of insurance obligations in this state.

50. Separately, on information and belief, CNA has a pattern and practice of destroying and willfully concealing evidence potentially relevant to legal inquiries. Specifically, on information and belief, when CNA began to understand that it was facing long-term liability arising out of earlier insurance policies, CNA intentionally and willfully destroyed evidence of certain policies in an effort to avoid liability under its policies. Said conduct violates California Penal Code §§ 118, 136 and, in particular, Penal Code § 135. Under California law, violation of a penal statute gives rise to an action under California Business & Professions Code § 17200. See Stop Youth Addiction, Inc. v. Lucky Stores, Inc., 17 Cal.4th 553 [71 Cal.Rptr.2d 731] (1998).

51. In addition, the law firm of Cortner, McNaboe, Colliau & Elenius ("CMC&E") is, on information and belief, an association of in-house CNA attorneys pretending to be a real law firm.

52. CMC&E appeared in the UNION PACIFIC RAILROAD action on behalf of a party adverse to Plaintiff KESLER.

53. CMC&E has now attempted to assume the role of managing and directing KESLER's defense in the UNION PACIFIC RAILROAD action

54. The Defendants' policies and procedures, including but not limited to those set forth herein, constitute unfair, unlawful, dishonest, deceptive, fraudulent and illegal practices entitling the Plaintiff to restitution, injunctive and other relief.

55. WHEREFORE, Plaintiff prays for judgment as set forth below.

## SIXTH CAUSE OF ACTION
### (Violation of California Business & Professions Code § 17500)
### [As to All CNA Defendants]

56. Plaintiff incorporates into this cause of action each and every general allegation as if the same were set out in full herein.

57. CNA has made false and fraudulent claims in advertising related to insurance policies, including the insurance policies relevant to this matter. Specifically, CNA advertises that it can easily respond and handle claims even 30 years after CNA issues its policies. (For example, see Exhibit "B.")

58. On information and belief, CNA's claims are false, fraudulent and misleading, as CNA has involved itself in an intentional effort to destroy and conceal insurance policies after only a few years. In fact, on information and belief, nowhere does CNA keep records of its policies dating back 30 years.

59. As a result of the foregoing circumstances, the CNA Defendants' conduct violates California Business & Professions Code § 17500, entitling the Plaintiff to restitution, injunctive and other relief.

60. WHEREFORE, Plaintiff prays for judgment as set forth below.

## PRAYER FOR RELIEF

1. General damages according to proof;

2. Special damages according to proof;

3. Costs of suit;

4. Attorney's fees pursuant to *Brandt v. Superior Court*, 37 Cal.3d 813 (1983); *Mustachio v. Ohio Farmers Ins. Co.*, 44 Cal.App.3d 358 (1975); California Code of Civil Procedure § 1021.6; and any other applicable authority;

5. As to the First Cause of Action, a judgment declaring the rights and obligations of the parties and declaring that CNA must pay for all reasonably necessary and proper defense costs and, if necessary, indemnify and hold the Plaintiff harmless from all damages related to the UNION PACIFIC RAILROAD action.

6.    As to the §§ 17200 and 17500 causes of action, an injunction ordering CNA to cease and desist in its improper business practices;

7.    For punitive damages in an amount consistent with the acts complained of and the financial wherewithal of the Defendants;

8.    For such other relief as the Court deems just and proper, including prejudgment interest.

Dated: December 27, 2004

LAW OFFICES OF HANS W. HERB

_____
Hans W. Herb
Attorney for Plaintiff, Irving KESLER

# CNA/insurance — CERTIFICATE OF INSURANCE

The Policy identified below by a policy number is in force on the date of Certificate Issuance. Insurance is afforded only with respect to those coverages for which a specific limit of liability has been entered and is subject to all the terms of the Policy having reference thereto including for Umbrella Excess Third Party Liability Insurance a provision requiring the maintenance of underlying insurance or self insurance. This Certificate of Insurance neither affirmatively nor negatively amends, extends or alters the coverage afforded under any policy identified herein.

In the event of cancellation of the Policy the Company issuing said Policy will make all reasonable effort to send notice of cancellation to the Certificate Holder at address shown herein, but the Company assumes no responsibility for any mistake or for failure to give such notice.

NAME AND ADDRESS OF INSURED

West Coast Scrap Producers, Inc.
99 Frances Street
Santa Rosa, Ca

NAME AND ADDRESS OF CERTIFICATE HOLDER

Donald Kesler, Irving Kesler and Joe Bessone,
Individually and Pacific Junk Company Inc.
1143 Briggs Avenue
Santa Rosa, Ca.

DATE OF CERTIFICATE ISSUANCE:

June 14, 1976

_Authorized Representative_

**THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE HOLDER**

| | TYPE OF INSURANCE IS DESIGNATED BELOW | COVERAGES | LIMITS OF LIABILITY | | |
|---|---|---|---|---|---|
| | | | EACH PERSON | EACH OCCURRENCE | AGGREGATE |
| I. | [X] Comprehensive Automobile Liability<br>[ ] Schedule Automobile Liability<br>CAP132 57 61<br>[ ] Protection Against Uninsured Motorists | Bodily Injury Liability<br>Property Damage Liability<br>Bodily Injury and Property Damage Liability Combined<br>Uninsured Motorists | $100,000.<br><br><br>$15,000. | $300,000.<br>$100,000.<br><br>$30,000. † | |
| II. | [X] Comprehensive General Liability<br>[ ] Owners', Landlords' and Tenants' Liability<br>[ ]<br>[X] Manufacturers' and Contractors' Liability<br>[ ] Owner's and Contractor's Protective Liability<br>[ ] Beauticians' Malpractice Liability | Bodily Injury Liability<br>Property Damage Liability<br><br><br>Bodily Injury and Property Damage Liability Combined<br>Bodily Injury Liability<br>Property Damage Liability | $<br>$<br><br><br><br>$100,000. | $<br>$<br><br>$<br><br>$300,000.<br>$100,000. | $<br>$<br><br>$<br><br><br>$100,000. |
| III. | [ ] THE ABOVE CERTIFICATE HOLDERS ARE NAMED AS ADDITIONAL INSUREDS AS RESPECTS OPERATION AT 1143 BRIGGS, SANTA ROSA, CA. | | | | |
| IV. | [X] Workmen's Compensation<br>Employers' Liability   PWC 161 47 78 | A. Statutory<br>B. Bodily Injury | Statutory<br>$100,000. † | Locations: | |
| V. | [X] Umbrella Excess Third Party Liability<br>RDU146 84 27 | The Excess Insurer's Limit of Liability is (Complete one)<br>(a) $1,000,000.   in excess of a Retained Limit<br>(b) Up to $ 10,000.   in excess of a Retained Limit<br>and in excess of various underlying Insuror's Limits of Liability | | | |

† each Accident

Complete below, by designating company by number in the box and entering policy number and expiration date in the sections corresponding to the type of insurance indicated above.

| I. [X] CAP 132 57 61 | II. [X] CAP 132 57 61 | III. [ ] | Policy Number Expiration Date 10-1- |
|---|---|---|---|
| IV. [X] PWC 161 47 78 | V. [X] RDU 146 84 27 | **EXHIBIT A** | Policy Number Expiration Date 10-1 |

[1] Continental Casualty Company
[2] Transportation Insurance Company
[5] CNA Casualty of California
[6] National Fire Insurance Company of Hartford
[7] Transcontinental Insurance Company
[8] American Casualty Company of Reading, Pa
[9] Valley Forge Insurance Company

G-33345-A (Calif.)



"Who pays the price if your business is sued in 15 years for something that happened today?"

Imagine being surprised in 15 years with a liability lawsuit.

You just never know if a service performed today, a product sold tomorrow, or a material used next week may come back to haunt you in the form of a lawsuit. Even if it takes 5, 10 or 30 years to result in a claim, your business would be liable for the loss.

That's why it's critical to choose an insurance company *now* with the financial strength to pay claims not just today, but in 20 or 30 years.

Independent agents often recommend the CNA Insurance Companies because we have the financial strength to be there when you need us. CNA, a multi-line insurance group, has nearly 100 years' experience, over $9 billion in revenue, over $30 billion in assets, $4.5 billion in stockholders' equity and consistently high ratings.*

While you can't see what the future holds, you can be sure that CNA has the financial strength to protect your business over the long term.

### Ask your independent agent about CNA.

CNA provides property/casualty life/health and employee benefits insurance. Independent agents who represent CNA are listed in the Yellow Pages.

**INSURANCE FROM**

**CNA**

*For All the Commitments You Make®*
CNA Insurance Companies/CNA Plaza/Chicago IL 60685

*A.M. Best Standard & Poor's Moody's Duff & Phelps

EXHIBIT B